IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| COMTIDE HOLDINGS, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 07-CV-1190 |
| v. | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| BOOTH CREEK MANAGEMENT CORP., | : | Magistrate Judge Terence P. Kemp |
| | : | |
| Defendant. | : | |

## OPINION & ORDER

### I.  INTRODUCTION

This matter is before the Court on Defendant Booth Creek Management's ("Booth Creek") Motion to Dismiss Plaintiff Comtide Holdings, LLC's, ("Comtide") complaint. Comtide brought a breach-of-contract action for a broker's fee in Booth Creek's acquisition of an auto dealership.  For the reasons set forth below, the Court **GRANTS** Booth Creek's Motion to Dismiss.

### II.  BACKGROUND

On March 9, 2005, J. Daniel Schmidt contracted with Booth Creek, a holding company for the interests of the Gillett family, to identify auto dealerships for Booth Creek's acquisition. Booth Creek agreed to pay Schmidt five percent of the purchase price for this service.  Schmidt duly introduced Booth Creek to Berlin City, a New England dealership, and protracted negotiations ensued.  The contract between Schmidt and Booth Creek expired on March 9, 2006. On August 1, 2007, Booth Creek purchased Berlin City for $86,000,000.  Schmidt demanded a broker's fee of $4,300,000.  Booth Creek refused.  Schmidt assigned his contractual rights to his

limited liability corporation, Comtide, which initiated this action in Ohio state court.  Booth

Creek removed the case to this Court and now moves to dismiss the complaint.

## III.  STANDARD OF REVIEW

In adjudicating a Rule 12(b)(6) motion to dismiss, this Court is limited to evaluating

whether the complaint sets forth allegations sufficient to make out the elements of a cause of

action.  *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983).  The Court must

"construe the complaint in the light most favorable to the plaintiff, accept its allegations as true,

and draw all reasonable inferences in favor of the plaintiff."  *Directv, Inc. v. Treesh*, 487 F.3d

471, 476 (6th Cir. 2007).  Although liberal, this standard of review "requires more than labels

and conclusions."  *Bell Atl. Corp. v. Twombly*, __U.S.__; 127 S.Ct. 1955, 1964-65 (2007).  A

"formulaic recitation of the elements of a cause of action will not do. . . ."  *Id.*  Rather, a

plaintiff's factual allegations must "raise a right to relief above the speculative level."  *Id*. at

1974.

## IV.  LAW & ANALYSIS

Comtide asserts five claims in its complaint: (1) breach of contract; (2) breach of

fiduciary duty; (3) entitlement to equitable relief; (4) fraud; and (5) reformation.  Booth Creek

moves to dismiss the complaint on the grounds that Schmidt was only entitled to a broker's fee

so long as Booth Creek closed the deal within twelve months of the expiration of the agreement.

It did not.  Therefore, Booth Creek argues that the contract precludes Comtide's claims.[1]

---

[1]A federal court sitting in diversity jurisdiction must apply the contract law of the forum
state.  *See Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003).  Accordingly, Ohio
law governs the interpretation of this contract.

## A.  BREACH OF CONTRACT

The interpretation of a clear and fully integrated contract is a matter of law.  *First Fed. Sav. & Loan Assn. v. Cheton & Rabe*, 567 N.E.2d 298, 301 (Ohio Ct. App. 1989) (citing *Inland Refuse Transfer Co. v. Browning-Ferris Ind. of Ohio*, 474 N.E.2d 271, 272 (Ohio 1984)).  The Court must defer to the express terms of an unambiguous instrument and interpret it according to its plain, ordinary, and common meaning.  *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 685 (Ohio 1995).  As a result, the Court must not travel beyond the contract's four corners to determine the rights and obligations of the parties.  *Seringetti Constr. Co. v. City of Cincinnati*, 553 N.E.2d 1371, 1373 (Ohio Ct. App. 1988).

> The contract at issue is perfectly clear.  The "Closing Clause" provides:
>
> CLOSING.  Broker shall receive reasonable notice of closing.  The BROKER's fee . . . is payable in full to the BROKER **only upon closing** . . . and **payment** of the consideration to the SELLER, and the BROKER shall be paid his fee when such consideration is paid, if BUYER buys from, invests in, or manages operations for any SELLER **during the term of this agreement, or within twelve (12) months after the termination of this agreement**. . . .

(Buyer's Broker Agreement, § 5) (emphasis added).  The Closing Clause has two notable conditions.  The broker's fee is payable: (1) only upon closing, (2) so long as Booth Creek closes the deal during the term of the agreement or within twelve months of its expiration.  Booth Creek purchased Berlin City in August 2007, seventeen months after the expiration of the contract.  By the unambiguous terms of the agreement, Comtide is therefore not entitled to a broker's fee.

Comtide counters that the contract is ambiguous and thus not subject to interpretation as a matter of law.  Specifically, Comtide argues that Schmidt's right to a commission vests not upon closing but when Booth Creek "**buys** [a dealership] **from** . . . any SELLER during the term of this agreement, or within twelve (12) months after the termination of this agreement."

(Buyer's Broker Agreement, § 5) (emphasis added).  Comtide contends that "buys from" is subject to various interpretations.  For example, Booth Creek could "buy [a dealership] from" Berlin City when the parties agree to a price or when they substantially complete negotiations. Comtide alleges that Booth Creek and Berlin City agreed upon all material terms of the acquisition, including the price, in 2005, well before the expiration of the agreement.  Because the closing of the deal is only one of several ways to interpret "buys from,"  Comtide concludes that the ambiguity of the contract precludes judgment as a matter of law.

Despite Comtide's attempt to muddy the interpretive waters, the agreement could not be clearer.  The Closing Clause states in no uncertain terms that "[t]he broker's fee . . . is payable in full to the broker **only** upon **closing**," not after substantial negotiations nor upon an agreement to agree as Comtide suggests.  *Id*.  (Emphasis added).  Even the title of the clause, "CLOSING," indicates that Schmidt's right to a finder's fee vests upon consummation of the deal and not before.  *Id*.  As if to reiterate this condition, the contract provides that the broker fee "shall be paid when such consideration is paid" from buyer to seller.  *Id*.

Consider the following hypothetical.  If Booth Creek agreed in principle to purchase Berlin City but the deal fell apart because the employees, who owned forty-nine percent of the dealership's stock, blocked the sale, would Schmidt be entitled to a broker's fee?  Not according to the contract, which provides that Schmidt would be entitled to a commission only if money changed hands between Booth Creek and Berlin City.  Schmidt's right to a broker's fee did not vest when the parties negotiated a price or the key terms of a purchase agreement.  Rather, it vested upon closing.  Because Schmidt's right to a broker's fee expired in March 2007, five

months before the deal closed, he was not entitled to a commission.  To construe the agreement

differently would require a departure from the unequivocal language of the contract.

Further, there is great merit to the rule that unambiguous contractual language must be

enforced as written when "dealing with a substantial contract between commercially

sophisticated parties who know how to say what they mean and have an incentive to draft their

agreement carefully."  *Confold Pac.*, *Inc. v. Polaris Ind., Inc.*, 433 F.3d 952, 955 (7th Cir. 2006).

It enables the Court to resolve contract disputes "quickly and cheaply, protects the parties against

the vagaries of the litigation process . . .  and by thus minimizing both contractual transaction

costs and uncertainty, increases the value of contracts as a means of conducting business."  *Id.*

To escape the confines of the agreement, Comtide also attempts to introduce extrinsic

evidence to suggest that the parties extended the time period under which Schmidt was entitled

to a broker's fee.  On June 13, 2007, Schmidt wrote George Gillett, President and Chairman of

Booth Creek, congratulating him on his purchase and demanding a commission.  Booth Creek's

Comptroller handwrote the following on Schmidt's letter and faxed it back: "Please fill out the

W-9 + fax back to me @ 970 - XXX - XXXX.  Thx. Eric."  Pl. Ex. 3. (The "Eric Fax").

Comtide contends that the Eric Fax demonstrates Booth Creek's intent to pay Schmidt's broker's

fee because he was so entitled by the terms of the contract.  It plainly does not.

Nor should the Court consider the Eric Fax.  Extrinsic evidence is not admissible to

ascertain the intent of the parties where the contract is clear.  *Graham v. Drydock Coal Co.*, 667

N.E.2d 949, 952 (Ohio 1996); *Rollins v. Bd. of Educ. for Cleveland Heights-Univ. Heights City

Sch. Dist.*, 532 N.E.2d 1289, 1294 (Ohio 1988).  Rather, the intent of the parties to a contract is

presumed to reside in the unambiguous language of the agreement.  *Kelly v. Med. Life Ins. Co.*,

509 N.E.2d 411, 412 (Ohio 1987). The Court "cannot in effect create a new contract by finding

an intent not expressed in the clear language employed by the parties." *Alexander v. Buckeye*

*Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978). Comtide's attempt to undermine the

unmistakable language of the bargain by construing a non-committal and essentially clerical note

as somehow modifying Booth Creek's contractual obligations is futile. By the plain language of

the agreement, Comtide is not entitled to a commission.

## B. FIDUCIARY DUTY

In the alternative, Comtide argues that the contract created a principal-agent relationship

giving rise to a fiduciary duty. Comtide alleges that Booth Creek breached this duty by failing to

honor the contract.[2] Comtide is mistaken. First, it is axiomatic that a principal-agent

relationship exists "when one party exercises the right of control over the actions of another, and

those actions are directed toward the attainment of an objective which the former seeks."

*Hanson v. Kynast*, 494 N.E.2d 1091, 1094 (Ohio 1986). Here, it is undisputed that neither party

exercised control over the other. Schmidt agreed to provide the name of a potential acquisition

target. He had no contractual authority to negotiate on Booth Creek's behalf or bind it in any

way. Nor did Schmidt hold himself out to a third party as Booth Creek's agent. In the absence

of either actual, inherent, or apparent authority, no principle-agent relationship exists.

Moreover, under Ohio law, a breach-of-fiduciary-duty claim presupposes a fiduciary

relationship. *See Strock v. Pressnell*, 527 N.E.2d 1235, 1243 (Ohio 1988); *McConnell v. Hunt*

---

[2]Notably, Comtide does not allege that Booth Creek purposely delayed its acquisition of Berlin City in bad faith so as to unfairly deprive Schmidt of the broker's fee. Nevertheless, such an accusation would not change the fact that no principle-agent relationship existed or that Comtide cites no facts to support its allegation of bad faith other than Booth Creek's refusal to pay Schmidt a commission.

*Sports Ent.*, 725 N.E.2d 1193, 1215 (Ohio Ct. App. 1999). The Ohio Supreme Court has noted

that a "fiduciary relationship is one in which special confidence and trust is reposed in the

integrity and fidelity of another and there is a resulting position of superiority or influence,

acquired by virtue of this special trust." *In re Termination of Employment of Pratt*, 321 N.E.2d

603, 609 (Ohio 1974). It is well settled that a contractual relationship, in and of itself, does not

create a fiduciary duty. *Blon v. Bank One*, 519 N.E.2d 363, 367-368 (Ohio 1988). Comtide

merely asserts the existence of a fiduciary duty. There is nothing in the complaint to suggest a

special trust or relationship with Booth Creek. "To survive a motion to dismiss for failure to

state a claim upon which relief can be granted, [the plaintiff's] factual allegations must be

enough to raise a right to relief above the speculative level. . . . [This] requires more than labels

and conclusions." *Twombly*, 127 S.Ct. at 1964-65. According to the complaint, the relationship

was contractual and nothing more.

## C. EQUITABLE RELIEF

Comtide further alleges that because Schmidt identified Berlin City for Booth Creek's

acquisition, it is entitled to equitable relief for the value of the benefit conferred. In support of

this petition, Comtide throws a hodgepodge of doctrinal hooks into the water, including "unjust

enrichment," "quantum meruit," "implied contract," "promissory estoppel," and the "equitable

doctrine of procuring cause," in the hope that the Court will bite on one. It will not. Under Ohio

law, absent fraud, illegality, or bad faith, a party to an express contract may not bring a claim for

equitable relief, particularly when the agreement contains a provision governing the allegedly

inequitable conduct at issue. *See, e.g., Hughes v. Oberholtzer*, 123 N.E.2d 393, 396 (Ohio 1954)

(holding that it "is generally agreed that there cannot be an express agreement and an implied

contract for the same thing existing at the same time"); *Delicom Sweet Goods of Oh., Inc. v. Mt. Perry Foods, Inc.*, No. 04 CA 4, 2005 WL 525185, at \*4 (Ohio Ct. App. Mar. 2, 2005) (noting that a party cannot prevail on a theory of unjust enrichment when they have formed an express contract); *Wolfer Ent., Inc.*, *v. Overbrook Dev. Corp.*, 724 N.E.2d 1251, 1254 (Ohio Ct. App. 1999) (holding that a "party seeking a remedy under a contract cannot also seek equitable relief under a theory of unjust enrichment or quantum meruit, because the terms of the agreement define the parties' relationship").

The rationale is simple.  Equitable remedies permit the Court to give legal force to the reasonable expectations of parties where they did not or could not form an agreement manifesting their specific intent.  *See Hughes*, 123 N.E.2d at 396.  But these remedies are inapplicable to this case because Schmidt and Booth Creek defined their rights and obligations in the contract.  It would be inequitable for the Court to substitute general notions of reasonableness for the unmistakable language to which the parties agreed.  Equitable remedies are not a tool by which a party may escape the consequences of an ill-advised bargain.


Comtide insists that Ohio law carves out an exception to this rule in the form of the procuring-cause doctrine.  *See Bauman v. Worley*, 143 N.E.2d 820, 822 (Ohio 1957).  The procuring-cause doctrine provides that "*in the absence of contractual terms to the contrary,* a [business] finder is entitled to a commission or fee only if his introduction results in a transaction." *Legros v. Tarr*, 540 N.E.2d 257, 262 (Ohio 1989) (emphasis added).  Comtide relies heavily upon *Legros v. Tarr*, in which an investment bank contracted with a steel company to identify potential acquisitions.  *Id*.  One of the steel company's executives resigned, started up

a holding company, and used the information provided by the bank to acquire several businesses. *Id.* The Ohio Supreme Court held that "while a party to an acquisition is ordinarily held to have no liability to a finder *in the absence of a contract*, express or implied in fact, to pay for such a finder's services, an exception exists where the party or its agent misappropriates the finder's proprietary information and uses it to such party's benefit, in which case an agreement to pay may be implied in law and the finder can recover in *quantum meruit*." *Id.* at 264 (emphasis added).  Comtide concludes that even if the contract bars recovery, *Legros* entitles it to a finder's fee by virtue of the benefit it conferred upon Booth Creek.

Rather than bolster Comtide's case, *Legros* in fact undermines it.  In *Legros*, no contract existed between the investment bank and the executive who misappropriated the information.  *Id.* Absent an express agreement defining the rights and obligations of the parties, the Court was free to act in equity to give force to the bank's reasonable expectations.  Here, the intent of the parties as manifested in the contract specifically bars recovery of a finder's fee if the transaction closes more than a year after the expiration of the agreement.  In *Legros* the court merely filled in the blanks.  *Id.* Here, to grant Comtide a commission would be to delete the expiration clause and rewrite an agreement negotiated in good faith and at arms length.  Notably, the *Legros* opinion cabined the application of the procuring-cause doctrine to cases in which there were no contractual terms to the contrary.  *Id.* at 262.

*Wolfer Enterprises, Inc. v. Overbrook Dev. Corp.*, 724 N.E. 1251, 1254 (Ohio Ct. App. 1999), is directly on point.  In *Wolfer*, a real estate broker contracted with a property owner to identify potential buyers in return for a commission so long as the deal closed before the agreement expired.  *Id.* at 1253.  The broker found a buyer who closed on the property, but not

before the expiration of the contract.  *Id*.  Enforcing the plain language of the instrument, the

court denied the broker's claim for breach of contract and for relief in equity.  *Id*.  The court

noted that to grant equitable relief under the procuring-cause doctrine would give the broker a

right to compensation in perpetuity, effectively deleting the expiration date in the contract.  *Id*. at

1254.  This is exactly the case here.  For the same reasons, Comtide's petition for equitable relief

is denied.  *See also R. Corwin Pauly, Jr. & Assoc. v. Keko Corp.*, 767 N.E.2d 1203, 1204 (Ohio

Ct. App. 2001) (the court refused to grant equitable relief to a business finder because the terms

of an express contract preclude recovery); *Link-Hellmuth, Inc. v. Carey*, 656 N.E.2d 358, 361

(Ohio Ct. App. 1995).

### D.  FRAUD

Comtide also alleges that Booth Creek defrauded it by concealing the closing of the deal

and misrepresenting its intention to pay Schmidt a commission.  To meet the pleading

requirements for a fraud claim under Ohio law, a plaintiff must allege with particularity: (1) a

representation or, where there is a duty to disclose, concealment of a fact; (2) which is material

to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter

disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4)

with the intent of misleading another into relying upon it, (5) justifiable reliance upon the

representation or concealment, and (6) a resulting injury proximately caused by the reliance.

*Gaines v. Preterm-Cleveland, Inc.*, 514 N.E.2d 709, 712 (Ohio 1987).

Comtide presents a fraud claim in three parts.  First, Comtide alleges that Booth Creek

failed to notify Schmidt of the closing and to provide him with the deal documents as required by

the contract.  This claim is meritless.  Booth Creek acquired Berlin City on August 1, 2007, five

-10-

months after Schmidt's right to a broker's fee expired.  Schmidt had no contractual right to a commission, let alone a right to be told of the deal or to peruse the purchase agreement.  Second, Comtide contends that Booth Creek falsely represented to third parties that Schmidt had no right to a commission on the Berlin City deal.  But this was true.  Schmidt's right to a commission had expired.

Third, Comtide accuses Booth Creek of falsely conveying its intention to honor the contract.  In support, it trumpets the much discussed Eric Fax.  To recall, when Schmidt learned of the deal, he wrote to Booth Creek congratulating Gillett on the deal and demanding his commission.  Booth Creek's Comptroller responded with a hand written fax:  "Please fill out the W-9 + fax back to me @ 970 - XXX - XXXX.  Thx. Eric."  Pl. Ex. 3.  Comtide contends that the Eric Fax constitutes fraud because it falsely represented that Booth Creek intended to pay Schmidt.  Comtide argues that it was injured as a result of its reliance on this lie.  This third allegation of fraud is as baseless as the first and second.

The Eric Fax makes no representations that Booth Creek would pay Schmidt a commission.  In substance and form, it is a hasty and essentially clerical communication.  Further, Comtide was not injured.  The only consequence of Booth Creek's alleged misrepresentation was that Schmidt did not learn until six weeks later that Booth Creek would not pay him a commission.  The only possible effect was that Comtide was six weeks delayed in bringing this breach-of-contract suit.  Yet Comtide's claim was in no way prejudiced by this delay.  Even if the Court construes the Eric Fax as a misrepresentation, the claim cannot stand as Comtide was not injured.

### E.  REFORMATION

Finally, Comtide demands reformation of the contract on account of both fraud and unilateral mistake.  Comtide alleges that Booth Creek misrepresented that it was immediately capable of acquiring and managing a large auto dealership.  In the alternative, Comtide contends that Schmidt erroneously believed as much.  Either way, Comtide argues that Booth Creek's inability to immediately purchase the auto dealer delayed the transaction such that Schmidt's right to a commission expired before the consummation of the deal.  As a result, Comtide asks the Court to reform the contract to reflect the true intent of the parties by extending the expiration date.

Reformation is an equitable remedy whereby the Court rewrites a contract because the agreement, by virtue of either fraud or mistake, does not reflect the intent of the parties.  *See Esteph v. Grumm*, — N.E.2d —, No. 07CA6., 2008 WL 682476, *4 (Ohio Ct. App. Mar. 13, 2008).  With respect to the fraud claim, Comtide fails to mention what, if any, representations Booth Creek made concerning its capacity to acquire a dealership such as Berlin City.  Federal Rule of Civil Procedure 9(b) requires a plaintiff to plead fraud with particularity.[3]  As such, "generalized and conclusory allegations that the defendant's conduct was fraudulent do not satisfy [a plaintiff's pleading burden]."  *Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 489

---

[3]Federal Rule of Civil Procedure 9(b) provides:

> [i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

(6th Cir. 1990).  Comtide merely rests on its assertion that Booth Creek represented that it had the personnel and capital to immediately purchase a dealership.  This is not sufficient.

Even if Comtide had met the pleading requirements, the Court would not reform the contract.  The agreement unambiguously states that "the execution of this agreement does not guarantee the purchase of the dealership."  (Buyer's Broker Agreement, § 6).  Reformation is a remedy that allows the Court to rewrite the contract in accordance with the intent of the parties.  Yet the intent of the parties is clear from the language of the agreement: Booth Creek was under no obligation to purchase Berlin City.  Nor did the agreement require Booth Creek to furnish a justification for its refusal to act on Schmidt's information.  Contractually, Schmidt bore the risk that Booth Creek could not, for whatever reason, purchase the dealership within the allotted time.  Booth Creek's ability to immediately act on Schmidt's information is immaterial because it was under no contractual obligation to do so.  The Court will not reform the contract merely to relieve Comtide from the consequences of its poor judgment when the agreement so clearly allocates the risk of delay to Schmidt.

The same applies to Comtide's petition for reformation on account of Schmidt's erroneous belief that Booth Creek could immediately purchase Berlin City.  Under Ohio law, a contract may not be reformed for a unilateral mistake.  *Bellish v. CIT Corp.*, 50 N.E.2d 147, 151 (Ohio 1943); *Galehouse Constr. Co., Inc. v. Winkler*, 714 N.E.2d 954, 955 (Ohio Ct. App. 1998).  The only caveat to this rule is that Ohio courts allow reformation for a unilateral mistake with respect to an insurance policy.  *Justarr Corp. v. Buckeye Union Ins. Co.*, 656 N.E.2d 1345, 1346 (Ohio 1995).  This exception does not apply here.

Ultimately, Schmidt's petition for reformation, like most of his claims, rests on the mistaken belief that his intent is relevant to interpreting the contract.  It is not.  As Learned Hand explained:

> [a] contract has, strictly speaking, nothing to do with the personal, or individual, intent of the parties. A contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent. If, however, it were proved by twenty bishops that either party, when he used the words, intended something else than the usual meaning which the law imposes upon them, he would still be held, unless there were some mutual mistake, or something else of the sort. Of course, if it appear by other words, or acts, of the parties, that they attribute a peculiar meaning to such words as they use in the contract, that meaning will prevail, but only by virtue of the other words, and not because of their unexpressed intent.

*Hotchkiss v. Nat'l City Bank of N.Y.*, 200 F. 287, 294 (S.D.N.Y. 1911).  Contracts derive value from the fact that their enforcement does not require a lengthy ex-post examination of the parties' thoughts and feelings.  Especially with sophisticated commercial entities, the Court need not weigh the reasonableness of an agreement or the intent of the signatories.  Such an analysis only adds uncertainty to commercial dealings and drives up the price of commercial activity.  Whatever Schmidt's intent, his contractual rights expired.  The agreement is unambiguous: he is not entitled to a commission, whether it be on a breach-of-contract claim or on any variety of exotic remedy that he parades before the Court.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Booth Creek's Motion to Dismiss.

**IT IS SO ORDERED**.

s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT COURT**

**Dated: May 22, 2008**