```
           IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

| | | |
|---|---|---|
| **COMTIDE HOLDINGS, LLC,** | : | |
| Plaintiff, | : | |
| v. | : | Case No. 2:07-cv-1190 |
| **BOOTH CREEK MANAGEMENT CORP.,** | : | JUDGE ALGENON L. MARBLEY |
| Defendant. | : | |

<u>**OPINION AND ORDER**</u>

This case is before the Court for consideration of a motion to intervene filed by Michael F. Creque, an individual who claims a financial interest in plaintiff Comtide Holdings, LLC. The motion is fully briefed, with both Comtide and defendant Booth Creek Management Corp. having opposed the motion. For the following reasons, the motion to intervene will be denied.

**I.**

Only a brief recitation of the background of this case is needed here. As the Court stated in its Opinion and Order of May 22, 2008, the case involves Comtide's claim for a brokerage fee arising out of Booth Creek's August 1, 2007, purchase of Berlin City, a New England auto dealership. Comtide alleges that it introduced the parties to each other while a contract between Comtide's principal, J. Daniel Schmidt, and Booth Creek was in effect, and that even though Booth Creek did not buy Berlin City until after that contract expired, Comtide (as the assignee of Mr. Schmidt's interest in the brokerage contract) is entitled to a commission on the sale.

According to the motion to intervene, the proposed intervenor, Michael Creque, was hired by Mr. Schmidt almost

twenty years ago to manage one of Mr. Schmidt's auto dealerships. In the ensuing years, he and Mr. Schmidt became business partners in a number of auto dealerships as well as other business ventures.  Eventually, when Comtide Holdings, LLC, was formed, Mr. Creque was made a 25% owner of that company.

The proposed intervenor's complaint alleges that Mr. Schmidt developed a plan over time to oust Mr. Creque from the parties' joint business ventures.  Part of that plan was the termination of Mr. Creque from his position as Vice-President, Treasurer, and Chief Operating Officer of Comtide.  There is separate litigation contesting the legality of that action, but it has been stayed by virtue of Comtide's receivership.  According to Mr. Creque's proposed complaint, another part of that plan was Mr. Schmidt's misappropriation of the corporate opportunity represented by the brokerage agreement which is the subject of this case.  Mr. Creque claims that Mr. Schmidt did not tell him about the deal so that Mr. Schmidt could retain the entire brokerage fee himself. The intervenor complaint asserts claims against both Comtide and Mr. Schmidt (who is identified in that complaint as a third-party defendant) for breach of fiduciary duty, self-dealing, fraudulent concealment, and common law fraud.  It does not assert any claims against Booth Creek.  The question before the Court is whether Mr. Creque should be allowed to intervene in this lawsuit for purposes of asserting these claims.

II.

Intervention is governed by Fed. R. Civ. P. 24, which states in pertinent part that:

> "(a)  Intervention of Right
>
> Upon timely application anyone shall be permitted to intervene in an action:
> ...(2) when the applicant claims an interest relating to the property or transaction

>    which is the subject of the action and
>    the applicant is so situated that the
>    disposition of the action may as a
>    practical matter impair or impede the
>    applicant's ability to protect that
>    interest, unless the applicant's interests
>    is adequately represented by existing
>    parties.
>
>    (b)   Permissive Intervention
>
>       Upon timely application anyone may
>    be permitted to intervene in an action:
>    ...(2) when an applicant's claim or defense
>    and the main action have a question of
>    law or fact in common....  In exercising
>    its discretion the court shall consider
>    whether the intervention will unduly
>    delay or prejudice the adjudication of
>    the rights of the original parties."

The leading case in this Circuit on both permissive intervention and intervention as of right is <u>Bradley v. Milliken</u>, 828 F.2d 1186 (6th Cir. 1987).  With respect to intervention as of right under Rule 24(a)(2), <u>Milliken</u> indicates that, first, the application must be timely. Whether an application for intervention is timely must be evaluated in light of the purpose for which intervention is sought, the length of time that the intervenor has known about the interest in the litigation, whether any of the original parties to the litigation would be prejudiced, and the stage to which the lawsuit has progressed when intervention is sought.  <u>See also Michigan Association for Retarded Citizens v. Smith</u>, 657 F.2d 102, 105 (6th Cir. 1981), holding that the stage to which a lawsuit has progressed is only one factor in the inquiry and is not dispositive, and that the court must also consider whether there are any "unusual circumstances" militating either in favor of or against intervention.

Second, in order to intervene as of right, a party must have an interest in the subject matter of the suit. Milliken indicates that this requirement must be liberally construed. Id. at 1192. However, the interest must be direct and substantial rather than peripheral or speculative. Grubbs v. Norris, 870 F.2d 343 (6th Cir. 1989); Meyer Goldberg, Inc. v. Goldberg, 717 F.2d 290 (6th Cir. 1983).

Next, the intervenor's ability to protect its interest must somehow be impaired by the disposition of the case. Grubbs, supra; Triax Co. v. TRW, Inc., 724 F.2d 1224, 1227 (6th Cir. 1984). Finally, the interest which the intervenor seeks to assert must not be adequately represented by the existing parties to the suit. Milliken, supra, at 1192. Ordinarily, where the intervenor and an existing party have the same ultimate objective in the litigation, the representation of the intervenor's interest by the existing party is presumed to be adequate, and the intervenor bears the burden of demonstrating the inadequacy of that party's representation of his interests. Meyer Goldberg, Inc. v. Goldberg, supra, at 293; see also In re General Tire and Rubber Co. Securities Litigation, 726 F.2d 1075, 1087 (6th Cir.), cert. denied sub nom. Schreiber v. Gencorp. Inc., 469 U.S. 858 (1984). However, the burden is not a particularly heavy one, and is satisfied if the intervenor can show that there is substantial doubt about whether his interests are being adequately represented by an existing party to the case. National Wildlife Federation v. Hodel, 661 F.Supp. 473 (E.D.Ky. 1987); see Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10 (1972).

Milliken indicates that the same timeliness inquiry must be made with respect to a motion for permissive intervention. Again, the timing of the application is only one factor to be

considered, and it is critical to consider whether the intervention will bring about undue delay in the litigation or prejudice existing parties. Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc., 823 F.2d 159 (6th Cir. 1987); Arrow Petroleum Co. v. Texaco, Inc., 500 F.Supp. 684 (S.D. Ohio 1980). Even a timely application for permissive intervention should be denied where the intervenor has not established that a common question of law or fact exists between his proposed claim and the claim of one or more of the existing parties.

Finally, the Court is not required to evaluate an application for intervention under only one subsection of Rule 24. When a party has moved for intervention as of right, but the facts more appropriately suggest that permissive intervention might be granted, and there are no other obstacles such as jurisdictional considerations which would counsel against such an analysis, the Court is free to consider whether permissive intervention might be granted. See Penick v. Columbus Education Ass'n, 574 F.2d 889 (6th Cir. 1978).

### III.

Before turning to an element-by-element analysis of Rule 24(a) or Rule 24(b), it is helpful to explore exactly what type of interest Mr. Creque claims in the subject matter of this case. If his interest does not meet the requirements of Rule 24, it will be unnecessary to analyze the remaining factors outlined above.

In the prototypical situation where a party wishes to intervene as a plaintiff, that party claims a direct interest in the claim being asserted by the existing plaintiff against the defendant, usually by virtue of a subrogation agreement or some other statutory or common law right of subrogation or indemnity. See, e.g., McDonald v. E.J. Lavino Co., 430 F.2d 1065 (5th Cir.

1970).  There, the courts have little difficulty concluding that the subrogee does have a legally-protectable interest in its share of any recovery.  See Maricco v. Meco Corp., 316 F.Supp. 2d 524, 526 ("[t]he courts have consistently recognized that an insurer who has a right of subrogation and pays a portion of the insured's loss ... possesses a separate and distinct substantive right of recovery against the defendant tortfeasor who allegedly caused the loss").  Thus, the subrogated party simply joins with the existing plaintiff in asserting the same cause or causes of action against the defendant.  Clearly, that is not the type of interest being advanced by Mr. Creque, because he claims no subrogation interest and has not indicated an intent to join in any of the claims being asserted against Booth Creek.

    In a less common situation, a stockholder of a corporate plaintiff may seek to intervene in order to assert an indirect entitlement to any payment made by the defendant to the corporate plaintiff.  Such intervention is not typically permitted.  Ordinarily, a corporation is deemed to be an adequate representative of the interests of all its shareholders because its duty is to maximize their return, including securing the largest judgment or settlement possible on the claim being asserted against the defendant.  See , e.g., Pharmaceutical Research & Manufacturers of America v. Commissioner, 201 F.R.D. 12, 14-15 (D. Me. 2001) (noting the general rule that the "presumption that the corporation will adequately represent its shareholders' interests ... can ordinarily be rebutted only if the shareholder shows ... corporate disloyalty or carelessness" and that "a shareholder does not acquire a personal cause of action for injuries to the corporation").

    There is no dispute that Mr. Creque's interest in this lawsuit, if any, arises out of his purported status as a 25% shareholder in Comtide.  However, he does not appear to be

asserting that Comtide is acting disloyally or carelessly with respect to its pursuit of the brokerage fee claim which it has asserted against Booth Creek.  Further, his proposed complaint in intervention does not allege that he has a separate entitlement, as a 25% shareholder of Comtide, to pursue that or any other claim against Booth Creek.  Rather, although he apparently wishes to intervene as a plaintiff, it is for the sole purpose of asserting what amounts to a cross-claim against his fellow plaintiff, Comtide, and its other shareholder, Mr. Schmidt (who would then be added to the case not as a third-party defendant but as an additional cross-claim defendant).  In essence, he is asserting theories under which he would become a creditor, in a sense, not of Booth Creek's, but of Comtide's, at least to the extent that as a minority shareholder he would have some claim on Comtide's assets, and also a creditor of Mr. Schmidt's, to the extent that he could prove that Mr. Schmidt defrauded him.  The question then becomes whether this type of interest, which is not an interest in the underlying claim being litigated, but an interest in establishing a particular legal relationship between Mr. Creque, on the one hand, and Comtide and Mr. Schmidt, on the other, is the type of legal interest that would support intervention under Rule 24.

    Vaughan v. Dickinson, 19 F.R.D. 323 (W.D. Mich. 1955), aff'd 237 F.2d 168 (6th Cir. 1956), considered an analogous situation.  There, the proposed intervenor was an actual creditor of one of the plaintiffs by virtue of a judgment obtained against the plaintiff in separate litigation.  The case in which the creditor sought to intervene was an action to collect on a judgment, which, if successful, would have resulted in the payment of a sum of money to the plaintiff.  The plaintiff's creditor sought to intervene simply in order to attempt to collect on his judgment.  Like Mr. Creque, the creditor in Vaughan did not assert any

specific interest in the subject of the underlying litigation beyond its potential to produce money for the existing plaintiff - money which could then be attached by the creditor.

The District Court, in a decision adopted and affirmed by the Sixth Circuit Court of Appeals, denied intervention.  In language that is equally applicable here, the court considered it significant that the proposed intervenor "has no direct interest in the issues involved in the present action between the plaintiffs and the defendants" and that "[h]is rights under his judgment against [the plaintiff] will not in anywise be affected by and judgment or decision of the court as to the rights and liabilities of the parties to the present action."  Vaughan, 19 F.R.D. at 328.  Additionally, quoting Pure Oil Co. v. Ross, 170 F.2d 651, 653 (7th Cir. 1948), the court noted that "to authorize an intervention, the intervenor must have an interest in the subject matter of the litigation of such a nature that he will gain or lose by the direct legal operation of the judgment."  Id. Because that interest was lacking, intervention was not permitted.  In addition to the fact that Vaughan, although venerable, is still good law in this Circuit, other courts have, in more recent decisions, reached similar results.  See, e.g., United States v. Alisal Water Corp., 370 F.3d 915, 920 (9th Cir. 2004), where the court held that the potential impairment of a creditor's ability to collect a debt or collect on a judgment "does not give rise to any right of intervention" and that "[t]o hold otherwise would create an open invitation for virtually any creditor of a defendant to intervene in a lawsuit where damages might be awarded."

There are some cases which have allowed creditors of the plaintiff to intervene to assert an entitlement to any funds the plaintiff might receive if the claims asserted against the defendant proved successful.  However, such cases represent an

-8-

exception to the general rule based on facts not present here. For example, in Intercontinental Electronics S.p.A. v. Roosen, 2006 WL 846763 (E.D. Mich. 2006), the court allowed a creditor of the plaintiff to intervene only because the judgment obtained by that creditor arose of the same dispute that was being litigated between the parties in the case in which intervention was sought - that is, that "the subject matter of the current action is directly related to the litigation resulting in the judgment in favor of [the intervenor]." Id. at *2.

That same relationship does not exist here. Although the circumstances under which Mr. Schmidt contracted with Booth Creek may have some evidentiary value with respect to Mr. Creque's claims against Mr. Schmidt and Comtide, those circumstances are not the subject of the present case. This case is concerned with whether Booth Creek breached some legal duty to Mr. Schmidt by not paying him (or his assignee, Comtide) a commission on the Berlin City deal, and not with the question of whether Mr. Schmidt breached some duty to either Comtide or Mr. Creque by keeping the commission contract quiet. That issue is raised solely by Mr. Creque's proposed complaint. Otherwise, Mr. Creque is actually a step removed from the judgment creditors who were denied intervention in Vaughan and Alisal Water. He does not yet have a judgment which either deems him a current shareholder of Comtide or someone who is entitled to damages against Mr. Schmidt. Thus, he is attempting to use the vehicle of intervention in order to establish a right to collect money from either Comtide or Mr. Schmidt, and then to assert that right in order to obtain some of the proceeds of any judgment which might be entered against Booth Creek. The Court finds that this type of contingent interest is so far removed from an interest in the subject matter of the case that it will not satisfy even the "rather expansive notion of the interest sufficient to invoke

intervention of right" which prevails in this Circuit.  <u>See</u> <u>Michigan State AFL-CIO v. Miller</u>, 103 F.3d 1240, 1245 (6th Cir. 1997).

If this factor alone is not sufficiently dispositive, the Court makes the following further observations.  It is not at all clear that Comtide would not adequately represent Mr. Creque's interests here.  Both it and he are best served if Comtide proves its claim against Booth Creek, reduces it to judgment, and collects on that judgment.  There is no suggestion that Comtide would jeopardize its own interest in a substantial recovery simply in order to make itself less collectible should Mr. Creque ultimately obtain some right to Comtide's assets.  Additionally, it is difficult to see how any judgment in this case would impair Mr. Creque's ability to pursue his claims against Comtide and Mr. Schmidt elsewhere; in fact, he has apparently attempted to do that, but the obstacle he faces is unrelated to anything that has happened or will happen here.  Rather, the state court receivership proceeding has temporarily halted his efforts. Further, to the extent that there are any issues of fact or law in common between the claims contained in Mr. Creque's proposed complaint and the claims which Comtide has asserted against Booth Creek, those issues are few and far between.  This case will focus on Booth Creek's conduct and the legal issues surrounding its failure to pay a commission.  About the only fact which would be common to both claims would be the execution of the contract itself, and that is not a fact which is in dispute.  The balance of Mr. Creque's claims about the contract would center around why Mr. Schmidt did not disclose its existence to Mr. Creque, and whether he had some obligation to do so, but those are not factual or legal issues which would be germane to the question of Booth Creek's liability, if any, to Comtide.

For all of these reasons, the Court concludes that Mr.

Creque has not shown an entitlement to intervene under Rule 24(a), nor has he shown that it would be a sound exercise of the Court's discretion to permit him to intervene under Rule 24(b). Therefore, his motion for leave to intervene will be denied.

**IV.**

For the reasons stated in this Opinion and Order, the motion of proposed intervenor Michael F. Creque to intervene (#42) is DENIED.

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
**Algenon L. Marbley**
**Untied States District Judge**

**Dated:** June 29, 2010