IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Comtide Holdings, LLC,            :

    Plaintiff,             :

  v.                               :     Case No. 2:07-cv-1190

Booth Creek Management Corp.,     :     JUDGE MARBLEY
                                        MAGISTRATE JUDGE KEMP
    Defendant.             :


OPINION AND ORDER

    This case involves an agreement in which plaintiff Comtide Holdings, LLC agreed to assist defendant Booth Creek Management Corp. in finding an automobile dealership to purchase.  The agreement, by its terms, ran from March 9, 2005 to March 9, 2006, and, as the Court of Appeals described it, provided that "if Schmidt (the principal of Comtide) found a dealership within the twelve-month term of the agreement that Booth Creek later purchased, Booth Creek would pay Schmidt five percent of the purchase price of the dealership."  Comtide Holdings, LLC v. Booth Creek Management Corp., 335 Fed. Appx. 587, *1 (6th Cir. July 2, 2009).  Comtide claims to have located such a dealership (the Berlin City dealership) in that time frame, and, because Booth Creek ultimately bought the dealership, seeks to be paid a commission on the purchase.  The timing of the closing of that purchase is at the heart of the parties' dispute.  Comtide contends that even though the purchase did not close until 29 months after the agreement was made, it is still owed a commission.  Booth Creek reads the contract differently and argues that no commission is owed.

    The case is currently before the Court for a ruling on

Comtide's motion for an *in camera* review of a discovery document (which, in actuality, is a motion asking for permission to keep the document rather than return it to Booth Creek, which claims inadvertently to have produced it during discovery). Comtide's motion is fully briefed and is ripe for decision, as is Booth Creek's motion for leave to file a surreply in opposition to the motion. The document in question has also been submitted to the Court for its review. For the following reasons, the Court will deny the motion for leave to file a sur-reply, and it will defer a ruling on Comtide's motion pending the submission of additional evidence.

## I.  Background

The background of Comtide's motion is straightforward. It propounded written discovery, including document requests, to Booth Creek. One of the documents Booth Creek produced in response was a copy of an email from a Booth Creek employee, Jeff Joyce, to another Booth Creek employee asking that a document entitled "Berlin City Brokerage Commission Calculation" be printed for the benefit of Booth Creek's president, George Gillett. A copy of this latter document, which was an attachment to Mr. Joyce's email, was also produced. This production occurred on November 25, 2009.

On April 16, 2010, Booth Creek asked for these documents back. According to Booth Creek, the documents are shielded from disclosure either by the attorney-client privilege or the work product doctrine. Booth Creek pointed out that it had listed these documents on its privilege log as covered by these privileges, and that their production to Comtide was inadvertent. On the privilege log, the documents are described as an email and an attachment "reflecting preparation of a request for legal advice from Winston & Strawn LLP on Berlin City transaction, generated in anticipation of litigation."

Comtide notes in its motion that none of the senders or recipients of this email or the attachment are attorneys.  Thus, it has raised the question of whether the documents are actually privileged and whether they have to be returned to Booth Creek.  The parties' legal arguments are described in the following section of this Opinion and Order.

## II.  The Parties' Positions

The position articulated by Comtide in the memorandum in support of its motion is also straightforward.  It notes that the privilege log entry prepared for these documents does not show that anyone who prepared either the email or the attachment is an attorney.  Rather, these documents appear to have been authored by, and exchanged between, business people.  Relying on decisions such as United States v. Walker, 243 Fed. Appx. 621, 623-24 (2d Cir. June 18, 2007), Comtide asserts that a document which was not privileged when created does not become so just because it is later sent to an attorney.  Thus, Comtide's motion essentially challenges Booth Creek to justify its privilege claim if it wishes to get the documents back.

In its response, Booth Creek does not deny that no attorney created or sent these documents.  However, it claims that, as a factual matter, earlier on the day the email was sent, Booth Creek learned that Comtide was making a claim for a commission on the transaction at issue in this case.  Booth Creek then began to prepare for a conversation with its lawyers, Winston & Strawn, about the matter.  To get ready, Mr. Joyce, who is Booth Creek's executive vice president, sent the attachment (which Booth Creek describes as "a description of some basis facts and strategic concerns pertaining to potential litigation with Comtide") to Mr. Gillett's assistant and asked her to print it for Mr. Gillett to read.  Booth Creek also claims that Mr. Joyce actually talked to the Winston & Strawn attorneys about this matter that same day.

-3-

Because, in Booth Creek's view, the documents were an integral part of a communication with counsel and were prepared precisely in order to allow it to communicate effectively with counsel, these documents fall within the scope of the attorney-client privilege.  Booth Creek relies upon decisions such as <u>United States v. ChevronTexaco Corp.</u>, 241 F.Supp. 2d 1065, 1077 (N.D. Cal. 2002) as support for this legal position, and it cites numerous additional cases which adopt the same reasoning.

    In its reply, Comtide does not really take issue with the legal principles upon which Booth Creek relies.  Rather, it attacks the foundation of Booth Creek's claim of attorney-client privilege.  It accurately notes that Booth Creek's response was not accompanied by an affidavit, declaration under penalty of perjury, or other sworn evidence supporting the facts which Booth Creek claims to be true.  In fact, the only attachment to Booth Creek's memorandum is a copy of the privilege log.  Because Booth Creek has the burden of proof with respect to whether the attorney-client privilege applies, Comtide argues that Booth Creek's failure to provide any proof (apart from the legal arguments it makes, which are not themselves proof of the facts upon which they rely) is fatal to its privilege claim.  Without additional proof, in competent form, the only factual record before the Court consists of the documents themselves, and, according to Comtide, the information contained within the four corners of these documents does not show that they were prepared as part of a course of conduct leading up to Booth Creek's seeking legal advice from its attorneys about Comtide's commission claim.

    Comtide's responsive argument is not limited, however, to pointing out the absence of any proof of the critical elements of the claim of attorney-client privilege.  It also notes, correctly, that Booth Creek's memorandum does not explain who

created the document that was attached to Mr. Joyce's email. Consequently, Comtide argues that even if what Booth Creek says about why Mr. Joyce sent the email is true - that is, that Booth Creek was reacting to Comtide's claim by preparing to consult with its attorneys - there is no evidence that Mr. Joyce (or whoever prepared the document) created the document as part of that course of action.  If that is so, the legal principle which Comtide relies on in support of its motion, namely, that sending an otherwise unprivileged document to an attorney does not make it privileged, is controlling, and completely undercuts Booth Creek's claim of privilege in this case.  Comtide also argues that the Court should take into account the clear relevance (and perhaps even central importance) of the document in terms of the key issue in this case, which is whether it was the parties' intent that Comtide receive a commission even if the sale did not close until twenty-nine months after the contract was signed. <u>See Comtide Holdings, LLC v. Booth Creek Management Corp.</u>, 335 Fed. Appx. 587, **3 (holding that the key paragraph of the contract concerning the time of closing "is confusing and ambiguous.  It requires interpretation and fact finding as to what the parties intended").

     III.  <u>The Motion for Leave to File a Surreply</u>

A.

More than three weeks after Comtide filed its reply brief, Booth Creek moved for leave to file a surreply.  That motion asserts that new matters were raised for the first time in the reply, and that a surreply is needed in order to permit Booth Creek to address these matters.  This argument is primarily focused on the second issue addressed in the reply, which is the purported materiality of the documents to the issue of the parties' intent behind the disputed portions of their agreement. Booth Creek also seeks to respond to the argument that it did not

adequately support the factual assertions made in its opposing memorandum, and to include an affidavit from Mr. Joyce as part of that response. Perhaps recognizing that this latter issue does not qualify as having been newly raised in the reply, Booth Creek asserts that the need to "supply the Court with factual information directly related to the issues at hand" can also support the filing of a sur-reply. Motion for Leave, Doc. #68, at 5. It has attached its proposed sur-reply and Mr. Joyce's affidavit to its motion. In response, Comtide argues that it did not raise any new issues in the reply and that there is no basis upon which the Court could permit a sur-reply to be filed. Because the decision either to allow or disallow this particular sur-reply will have an impact on the evidence the Court may consider in ruling on Booth Creek's assertion of attorney-client privilege, the Court must address this issue first before analyzing the privilege issue.

B.

This Court has, for many years, had a Local Civil Rule governing how many briefs may be filed in support of or in opposition to a motion. Currently, Local Civil Rule 7.2(a) provides that only supporting, opposing, and reply memoranda may be filed "except upon leave of court for good cause shown." Further, Rule 7.2(d) states that if a party will be relying on "proof of facts not already of record," the evidence which demonstrates the existence of those facts must be "submitted no later than[] the primary memorandum of the party relying on such evidence." Although Rule 7.2(a) does not define what constitutes good cause for filing any additional memoranda, such as a sur-reply, this Court has consistently held that in order for a party to be given permission to file a sur-reply, the reply brief must raise new grounds that were not presented as part of the movant's initial motion. See, e.g., Power Marketing Direct v. Moy, 2008

WL 4849289 (S.D. Ohio November 6, 2008) (Frost, J.); cf. White v. Honda of America Mfg., Inc., 191 F.Supp. 2d 933, 944 (S.D. Ohio 2002) (Sargus, J.) (holding that the mere fact that a sur-reply might be "helpful" is not enough to justify its filing).

    Here, Comtide's opening memorandum did not specifically assert that, even were the Court to find the documents in question to be privileged, it should nevertheless deny Booth Creek's request for their return because the documents are relevant to the central issue in the case.  That argument does appear for the first time in the reply.  There is no need for a sur-reply on that issue, however, because the question before the Court is not relevance, but privilege.  In deciding if a document is covered by the attorney-client privilege, the Court ordinarily assumes the document is relevant, "since the privilege has the effect of withholding relevant information from the fact-finder ...," see Fisher v. United States, 425 U.S. 391, 403 (1976).  Instead of determining how crucial an allegedly privileged document is to the claims before the Court, when a claim of attorney-client privilege has been made, "the relevant inquiry is whether the communication contained therein was made by a client to its attorney for the purpose of seeking legal advice or services, whether the client had a reasonable belief that the communication was confidential, and whether the disclosure of the communication would tend to reveal the confidential information." Tri-State Hospital Supply Co. v. United States, 2005 WL 3447890, *2 (D.D.C. December 16, 2005), citing Evans v. Atwood, 177 F.R.D. 1, 3 (D.D.C. 1997).  The degree of relevance of the communication itself is simply not a factor in this analysis.

    As to the other issue which Booth Creek wishes to address in its surreply, the Court agrees with Comtide that the question of whether Booth Creek could prove that these documents were privileged - proof which necessarily involved facts not of

-7-

record, because the only facts underlying Comtide's motion were that the documents had been produced, did not appear on their face to be privileged, and were the subject of a request to return them to Booth Creek - was squarely raised by Comtide's motion.  Comtide, of course, was not privy to the internal workings within Booth Creek which led to the creation of the document emailed by Mr. Joyce to Mr. Gillett's assistant, so its motion, reduced to its essence, said to Booth Creek, "You've claimed these documents are privileged - now prove it."  Thus, Booth Creek knew that when it filed its initial responsive memorandum, the sufficiency of its proof as to the required elements of attorney-client privilege had been placed at issue. It also knew, or should have known based on Local Civil Rule 7.2(d), that the time to submit such proof was with its opposing memorandum.  To allow it to submit that proof as part of a sur-reply would not only contravene the procedure set forth in the Local Civil Rules, but also would give Booth Creek the proverbial "second bite at the apple" on this issue.  Certainly, the information in Mr. Joyce's affidavit might be helpful in shedding light on the question raised by Comtide's motion, and might even be crucial in establishing Booth Creek's claim of privilege, but there is no discernible reason why that same affidavit could not have been attached to Booth Creek's initial memorandum.  The Court holds not only that it could have been so attached, but that it should have been if Booth Creek wanted the Court to take notice of it.  Under all of these circumstances, Booth Creek has failed to make the requisite showing of good cause for leave to file a sur-reply, and its motion to do so will be denied.

### IV.   The Privilege Question

It should by now be apparent that the proper resolution of the question of whether either or both of the documents at issue are protected by the attorney-client privilege depends to a great

extent on what the facts are surrounding their creation and dissemination. As in any case, the Court determines the facts based upon the record made by the parties.

Here, the record presently consists of the two documents in question, the privilege log, and Booth Creek's legal memorandum. The last of these clearly is not evidence. Further, a privilege log is not itself evidence of the existence of a privilege; rather, it is required by Fed.R.Civ.P. 26(b)(5) in order to alert the opposing parties that documents have been withheld on grounds of privilege and to provide enough information about the basis of the claim to "enable other parties to assess the claim," Fed.R.Civ.P. 26(b)(5)(A)(ii), or, as the Advisory Committee Notes to the 1993 Amendments to Rule 26 put it, to "evaluate the applicability of the claimed privilege or protection." If, as a result of that evaluation, a claim of privilege is challenged, it becomes the obligation of the party asserting the privilege to establish the requisite factual predicate for the claim by "'competent evidence.'" See Zelaya v. UNICCO Service Co., 682 F.Supp. 2d 28, 38 (D.D.C. 2010), quoting Alexander v. F.B.I., 192 F.R.D. 42, 45 (D.D.C. 2000). A claim of privilege may be defeated by an inadequate log, including one which does not provide evidentiary support for a claim of privilege not apparent from the identity of the sender or recipient, see United States v. Construction Products Research, 73 F.3d 464, 473 (2d Cir. 1996), but it cannot be sustained purely on the basis of unsworn information in a privilege log. Thus, for example, in Zelaya, the court rejected a claim of privilege even though defendants had prepared a privilege log precisely because they "provided no sworn statements testifying to fulfillment of the elements required for the privilege." Id. at 39. The Zelaya court also rejected the notion that it should allow defendants a second opportunity to comply with their obligation to make an adequate

-9-

factual record, noting that "defendants have taken their one bite at the apple and lost." Id. The same rationale applies here.

Even though this discussion would suggest that, on this record, Booth Creek's claim of privilege fails, the Court is not quite prepared to reach that conclusion. In its opposing memorandum, Booth Creek asserted that other privileged documents would show that the two documents in question were prepared in the course of seeking legal advice, and it offered to submit those other documents to the Court for an *in camera* review. While it would have been preferable, if the basis of Booth Creek's claim could more easily have been established by affidavits that would not have to be reviewed on an *ex parte* basis, to decide the issue in that way, the Court should not rule out the possibility that the *in camera* submission that Booth Creek proposed to make - a proposal which was, unlike the request for leave to file a sur-reply, presented in a timely fashion - might satisfy its burden of proof. Thus, to be fair to Booth Creek, the Court will accept an *in camera* submission of those documents which Booth Creek believes to be relevant to its claim of privilege, and will determine if they are sufficient to prove that the privilege extends to the two documents in question. Any documents so submitted should, of course, be properly authenticated by affidavit or otherwise so that the Court has some basis for concluding that they are what they purport to be. The Court will direct this submission to be made within the next seven days.

V. <u>An Additional Observation</u>

Although the Court is not permitting Booth Creek to file its proposed sur-reply, it does note, in reviewing the documents submitted in support of that motion, an assertion by Mr. Joyce that the document he sent along with his email was not created from scratch. Rather, he asserts in his affidavit that this

document was prepared using a pre-existing document as a template. The Court assumes that this pre-existing document was produced in discovery. The Court also believes that it may be difficult to determine whether the changes made to it were actually made in response to the communication received by Booth Creek about Comtide's potential claim, and made for purposes of seeking legal advice, without knowing the difference between the two documents. It may well be that the other privileged documents which the Court is permitting Booth Creek to submit will not address this question. However, since those are the only documents offered to the Court in a timely fashion, those are the only ones the Court will review. This observation may or may not have an impact on whether Booth Creek will continue to seek the return of these documents.

## V. Conclusion and Order

For all of the above reasons, the Court denies Booth Creek's motion for leave to file a sur-reply (#68). A decision on Comtide's motion for *in camera* review of a discovery document (#59) is held in abeyance pending the submission of certain privileged documents referred to in Booth Creek's memorandum in opposition (#65) in the footnote which appears on page three and the text which appears on page eight of that memorandum. Those documents shall be presented to the Court in a sealed envelope, delivered to the chambers of the undersigned Magistrate Judge, within seven days of the date of this order.

## VI. Procedure for Reconsideration

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to

objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge