```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Comtide Holdings, LLC,         :

    Plaintiff,             :

  v.                             :         Case No. 2:07-cv-1190

Booth Creek Management Corp., :         JUDGE MARBLEY
                                       MAGISTRATE JUDGE KEMP
    Defendant.             :

## OPINION AND ORDER

This Opinion and Order issues as a sequel to the Opinion and Order filed on October 19, 2010 (Doc. #71).  In that ruling, the Court held in abeyance the question of whether Comtide had to return two documents which had been produced by Booth Creek during discovery because Booth Creek had offered to produce some additional (but privileged) evidence that the documents in question are also privileged.  That evidence has now been submitted and the Court has reviewed it.  For the following reasons, the Court now grants Comtide's Motion for In Camera Review of a Discovery Document to the extent that it will permit Comtide to retain the documents which are the subject of the motion (Doc. #59).

### I. Background

This Opinion and Order must be read *in pari materia* with the prior Opinion and Order, which sets forth the background of this dispute.  It suffices to say here that the controversy surrounds a copy of an email from a Booth Creek employee, Jeff Joyce, to another Booth Creek employee asking that a document entitled "Berlin City Brokerage Commission Calculation" be printed for the benefit of Booth Creek's president, George Gillett.  Booth Creek

(according to it, inadvertently) produced this document to Comtide on November 25, 2009.  Later, it asked for the email and the attachment back on grounds that they were both protected by the attorney-client privilege.  However, because none of the senders or recipients of this email or the attachment are attorneys, Comtide questioned that claim and filed a motion seeking a determination of the issue.

In response to Comtide's motion, Booth Creek argued that the documents were prepared in anticipation of a conversation with its attorneys, Winston & Strawn, about the issue involved in this lawsuit.  It then asserted that because the documents were an integral part of a communication with counsel and were prepared precisely in order to allow it to communicate effectively with counsel, the documents fall within the scope of the attorney-client privilege.  See, e.g., United States v. ChevronTexaco Corp., 241 F.Supp. 2d 1065, 1077 (N.D. Cal. 2002).

The Court found that Booth Creek had not provided much, if any, support for the factual underpinnings of its argument.  It also rejected an attempt by Booth Creek to supplement the record with an affidavit from Mr. Joyce (the author of the email), ruling that Booth Creek knew that when it filed its initial responsive memorandum, the sufficiency of its proof as to the required elements of attorney-client privilege had been placed at issue, and that under the Court's Local Civil Rule 7.2(d), the time to submit such proof was with Booth Creek's opposing memorandum and not weeks after Comtide filed its reply.  The Court therefore disallowed the filing of a sur-reply.

However, that ruling did not completely close the factual record.  The Court noted that in its opposing memorandum, Booth Creek asserted that other privileged documents would show that the two documents in question were prepared in the course of seeking legal advice, and it offered to submit those other

documents to the Court for an *in camera* review. Because that offer (unlike the information submitted with the sur-reply) was timely made, the Court agreed to accept an *in camera* submission of those documents which Booth Creek believed to be relevant to its claim of privilege. Booth Creek made that submission, and the Court is now in a position to make its ruling on the question of whether the email in question and the attachment to that email must be returned to Booth Creek.

## II.  The New Factual Evidence

Because the additional evidence submitted by Booth Creek consists of privileged documents which were submitted *ex parte* and under seal, the Court will reveal only as much about those documents here as is necessary to explain the basis for its decision. Nothing in this order shall be deemed to waive Booth Creek's claim that these documents are privileged.

Booth Creek submitted two documents, both of which are dated the same day as Mr. Joyce's email. Both are listed on Booth Creek's privilege log (as entries 82 and 397). From the privilege log, it is apparent that they are both communications between Comtide and Winston & Strawn, and that Mr. Joyce sent his email to Winston & Strawn several hours after he sent the email that is the subject of this motion.

In the Court's view, these two documents add nothing of significance to the record. Without revealing what they do contain, the Court can safely say what they do not contain, which is any reference to the email in question or the attachment to it, or any information about who may have prepared the attachment or why. As the Court noted in its prior order, Mr. Joyce's affidavit (which, because it was attached to the proposed sur-reply, was not considered as evidence on the issue of privilege) asserts that the attachment was a modification of a pre-existing document. These two new documents do not help the Court

-3-

determine either whether, or how, this pre-existing document might have been modified on August 13, 2007 to create the attachment which Mr. Joyce sent to Ms. Rogus.

To summarize all of the pertinent information that can be gleaned from the current record, all the Court knows is:

1. Mr. Joyce sent the attachment in question to Ms. Rogus, for Mr. Gillett's benefit, on the morning of August 13, 2007. The attachment relates to Comtide's claim for a brokerage commission.

2. By that afternoon, he was in communication with Booth Creek's attorneys.

3. He did not send the attachment to the attorneys that afternoon or make any reference to it in his written communications.

4. There is no evidence that Mr. Gillett had any communications with Winston & Strawn that day.

### III. Analysis

Booth Creek's privilege claim hinges on this legal proposition:

> Materials, transmitted between nonlawyers, that reflect matters about which the client intends to seek legal advice are comparable to notes a client would make to prepare for a meeting with her lawyer-notes which could serve as an agenda or set of reminders about things to ask or tell counsel. It would undermine the purpose of the attorney-client privilege not to extend protection to such notes. Therefore, internal communications that reflect matters about which the client intends to seek legal advice are protected.

United States v. ChevronTexaco Corp., 241 F.Supp. 2d 1065, 1077 (N.D. Cal. 2002). This legal proposition, which Comtide apparently does not contest, has been applied by a number of courts to determine if communications among non-lawyers are

protected by the attorney-client privilege.  As explained in <u>In re New York Renu with Moistureloc Product Liability Litigation</u>, 2008 WL 2338552, *10 (D.S.C. May 8, 2008), the key question in such cases is whether the "dominant intent is to prepare the information in order to get legal advice from the lawyer."  It should not be forgotten, however, that the attorney-client privilege, like all privileges, is to be construed narrowly because it operates in derogation of the truth-seeking process. <u>See United States v. Nixon</u>, 418 U.S. 683 (1974).

     Here, although it is a close question, the Court cannot find that, as a matter of fact, either the email (which is primarily a transmittal letter) or the attachment "reflect matters about which the client intends to seek legal advice" in the way contemplated by the <u>ChevronTexaco</u> and <u>In re New York Renu with Moistureloc</u> decisions.  That is so primarily because there is no admissible evidence before the Court that the "dominant purpose" of Mr. Joyce's transmission of the attachment to Mr. Gillett was to enable Booth Creek to seek legal advice.  Apart from the lack of any indication on the attachment itself that it was prepared or modified for that purpose, the additional privileged communications do not refer to it, incorporate it, or pass it along to counsel.  Thus, while there is a loose connection between the attachment and the fact that Booth Creek intended to (and did) seek legal advice on Comtide's claim - that connection being the fact that both relate to the Comtide claim - the relationship is not strong enough to support the proposition that Mr. Joyce's email transmitting the document for Mr. Gillett's review was sent in order to facilitate the later communication with Winston & Strawn.  It could just as easily have been sent for a non-legal purpose. Without more evidence (or, to put it more precisely, when the evidence equally supports an inference that the communication either was, or was not, related to the

subsequent request for legal advice), the Court is constrained to rule in Comtide's favor on the question of whether this document must be returned to Booth Creek.

In reaching this decision, the Court is concerned about the larger principle of when the attorney-client privilege may legitimately be extended to communications which, on their face, do not appear to be covered by the privilege because neither the sender nor the recipient is an attorney.  Although there clearly are situations where that extension is proper, it is also appropriate to require substantial proof that the exception applies in order to keep the privilege, and any extensions, from being construed too broadly and to swallow up a large number of non-privileged, and perhaps highly relevant, communications and to prevent their disclosure during the discovery process.  In this case, to adopt any other construction of the evidence would be to enlarge the attorney-client privilege beyond its legitimate boundaries by concluding that any time there is some temporal relationship between non-lawyer communications and a request for legal advice from an attorney concerning the same subject, the former must necessarily have been intended, or primarily intended, to facilitate the latter.  This type of presumption would not only be inconsistent with the admonition to construe the privilege narrowly, but would also ignore the reality that when a person or business is threatened with litigation, that threat may spawn a flurry of both business and legal communications, and the burden must rest with the proponent of the privilege to come forward with sufficient evidence to allow the Court to distinguish between the two.

That does not mean, of course, that these documents will ultimately be admissible should the case go to trial.  There may be reasons other than privilege which would affect their use as substantive evidence, but that is not the issue here.  The issue

is simply whether the attorney-client privilege prevents Comtide from obtaining the documents as part of the discovery process. The Court concludes that it does not, and thus will rule in Comtide's favor on the pending motion.

## IV.  Conclusion and Order

For all the reasons set forth above, the Court grants Comtide's Motion for In Camera Review of a Discovery Document to the extent that it will permit Comtide to retain the documents which are the subject of the motion (Doc. #59).

## V.  Procedure for Reconsideration

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge